UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMARA SALOUM,

Plaintiff,

v.

CITY OF OAK PARK; STEPHANIE PRISTER, in her official and individual capacities; ARIANA GREFKE, in her individual capacity; INDIA ENGLAND, in her individual capacity,

Defendants.

Case No.:
Hon.
Magistrate Judge


| | |
|---|---|
| Jad Salamey (P88517)<br>Amy V. Doukoure (P90461)<br>CAIR-MI LEGAL FUND<br>Attorneys for Plaintiff<br>1905 S. Haggerty Road, Suite 5<br>Canton, MI 48188<br>313.314.3819<br>jsalamey@cair.com<br>adoukoure@cair.com | John J. Gillooly (P41948)<br>GARAN LUCOW MILLER, P.C.<br>Attorney for Defendants<br>1155 Brewery Park Blvd., Suite 200<br>Detroit, MI 48207-2641<br>313.446.5501 / Fax: 313.259.0450<br>jgillooly@garanlucow.com |


**NOTICE FOR REMOVAL OF CAUSE TO**
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TO: Jad Salamey, Esq.

Amy V. Doukoure, Esq.

1. On August 20, 2026, Plaintiff filed a Complaint in the Circuit Court for the County of Oakland, State of Michigan, in which CITY OF OAK PARK, STEPHANIE PRISTER, ARIANA GREFKE, and INDIA ENGLAND are the named Defendants.

3. Plaintiff, TAMMARA SALOUM, is described by Plaintiff as a citizen and resident of the State of Michigan.

4. Plaintiff herein seeks recovery from Defendants, CITY OF OAK PARK, STEPHANIE PRISTER, ARIANA GREFKE, and INDIA ENGLAND, alleging violations of 29 U.S.C. 2601, Family Medical Leave Act, please see pages 1-2 of Plaintiff's Complaint. Please see **Exhibit One**.

5. This Court has original jurisdiction over Plaintiff's claims inasmuch as those claims arise under the Constitution and laws of the United States, which provide for equal rights, and this action is removable to this Court pursuant to 28 U.S.C. §1331. The entire cause is removable, including claims arising under Michigan law, pursuant to 28 U.S.C. §1441(a).

6. That this Notice for Removal is hereby filed with this Court within thirty (30) days after receipt by Defendants, CITY OF OAK PARK, STEPHANIE PRISTER, ARIANA GREFKE, and INDIA ENGLAND, of a copy of the Complaint, which sets forth a claim for relief upon which this action is

based, as required by 28 U.S.C. § 1446(b), having been received by Defendants, on August 21, 2026.

7. That written notice of the filing of this Notice for Removal, has been given to the adverse party as required by law and a copy of the Notice for Removal has been filed with the Clerk of the Circuit Court for the County of Oakland, State of Michigan.

8. Attached is a copy of the Complaint served upon Defendants, CITY OF OAK PARK, STEPHANIE PRISTER, ARIANA GREFKE, and INDIA ENGLAND, in this cause.

WHEREFORE, Defendants, CITY OF OAK PARK, STEPHANIE PRISTER, ARIANA GREFKE, and INDIA ENGLAND, respectfully request that this Honorable Court enter an Order removing this cause from the Circuit Court for the County of Oakland, State of Michigan to the United States District Court, Eastern District of Michigan, Southern Division.

Respectfully submitted:
GARAN LUCOW MILLER, P.C.

/s/John J. Gillooly
JOHN J. GILLOOLY (P41948)
Attorney for Defendants
1155 Brewery Park Blvd., Suite 200
Detroit, MI 48207
313.446.5501
jgillooly@garanlucow.com

Dated: September 2, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMARA SALOUM,

Plaintiff,

v.

CITY OF OAK PARK; STEPHANIE PRISTER, in her official and individual capacities; ARIANA GREFKE, in her individual capacity; INDIA ENGLAND, in her individual capacity,

Defendants.

Case No.:
Hon.
Magistrate Judge

Jad Salamey (P88517)
Amy V. Doukoure (P90461)
CAIR-MI LEGAL FUND
Attorneys for Plaintiff
1905 S. Haggerty Road, Suite 5
Canton, MI 48188
313.314.3819
jsalamey@cair.com
adoukoure@cair.com

John J. Gillooly (P41948)
GARAN LUCOW MILLER, P.C.
Attorney for Defendants
1155 Brewery Park Blvd., Suite 200
Detroit, MI 48207-2641
313.446.5501 / Fax: 313.259.0450
jgillooly@garanlucow.com

## **AFFIDAVIT**

STATE OF MICHIGAN)
) ss.
COUNTY OF WAYNE )

JOHN J. GILLOOLY, being first duly sworn, deposes and says, that he is associated with the law firm of GARAN LUCOW MILLER, P.C. and that he has been charged with the defense and representation of CITY OF OAK

PARK, STEPHANIE PRISTER, ARIANA GREFKE, and INDIA ENGLAND, Defendants, herein; that in such capacity he has prepared the foregoing Notice for Removal of Cause to the United States District Court, Eastern District of Michigan, Southern Division, that the matters set forth in said Notice are true except as to those matters stated herein to be upon his information and belief as to which matters he is informed and believes same to be true.

Further deponent sayeth not.

/s/John J. Gillooly
JOHN J. GILLOOLY (P41948)

Subscribed and sworn to before me
on the 2nd day of September, 2026.

/s/Dena Marie Shealy
Dena Marie Shealy, Notary Public
County of Macomb, State of Michigan
My Commission Expires: 02/29/2032
Acting in the County of Wayne

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMARA SALOUM,

Plaintiff,

v.

Case No.:
Hon.
Magistrate Judge

CITY OF OAK PARK; STEPHANIE PRISTER, in her official and individual capacities; ARIANA GREFKE, in her individual capacity; INDIA ENGLAND, in her individual capacity,

Defendants.

| | |
|---|---|
| Jad Salamey (P88517)<br>Amy V. Doukoure (P90461)<br>CAIR-MI LEGAL FUND<br>Attorneys for Plaintiff<br>1905 S. Haggerty Road, Suite 5<br>Canton, MI 48188<br>313.314.3819<br>jsalamey@cair.com<br>adoukoure@cair.com | John J. Gillooly (P41948)<br>GARAN LUCOW MILLER, P.C.<br>Attorney for Defendants<br>1155 Brewery Park Blvd., Suite 200<br>Detroit, MI 48207-2641<br>313.446.5501 / Fax: 313.259.0450<br>jgillooly@garanlucow.com |

## PROOF OF SERVICE

STATE OF MICHIGAN)
) ss.
COUNTY OF WAYNE )

DENA MARIE SHEALY, being first duly sworn, deposes and says that she is employed with the law firm of GARAN LUCOW MILLER, P.C., and that on the 2nd day of September, 2026, she caused to be served a true copy

of **NOTICE FOR REMOVAL, AFFIDAVIT and PROOF OF SERVICE** upon the following:

| | |
|---|---|
| Jad Salamey<br>jsalamey@cair.com<br><br>Amy V. Doukoure<br>adoukoure@cair.com | Assignment Clerk<br>OAKLAND COUNTY CIRCUIT COURT<br>1200 N. Telegraph Road<br>Pontiac, MI 48341 |

by electronic filing the foregoing paper with the Clerk of the Oakland County Circuit Court using the E-File & Serve system.

/s/Dena Marie Shealy

# EXHIBIT ONE

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

| | | |
|---|---|---|
| TAMMARA SALOUM,<br><br>Plaintiff, | ) | |
| v. | ) | Case No. |
| CITY OF OAK PARK; STEPHANIE PRISTER, in her official and individual capacities; ARIANA GREFKE, in her individual Capacity; INDIA ENGLAND, in her individual capacity<br><br>Defendants. | ) | |

**CAIR-MI LEGAL FUND**
By: Jad Salamey (P88517)
Amy V. Doukoure (P90461)
Attorneys for Plaintiff
1905 S. Hagerty Road, Suite 5
Canton, MI 48188
(313) 314-3819
jsalamey@cair.com
adoukoure@cair.com

**Pursuant to MCR 1.109(D)(2)(a), Plaintiff states that there is no other pending or resolved civil action arising out of the transaction or occurrence alleged in this Complaint.**

**VERIFIED COMPLAINT**

NOW COMES, Plaintiff Tammara Saloum, by and through her counsel, CAIR-MI Legal Fund by, Jad Salamey and Amy V. Doukoure, and files the following Complaint for damages and injunctive relief against the Defendant City of Oak Park ("Oak Park") and avers as follows:

**PARTIES, JURISDICITION, AND VENUE**

1. Plaintiff Tammara Saloum ("Plaintiff") is an individual who resides in Dearborn, Wayne County, Michigan. She is a practicing Muslim of Iraqi national origin.
2. Defendant City of Oak Park ("City) is a municipal corporation organized under the laws of the state of Michigan located in Oakland County, Michigan.
3. Defendant Stephanie Prister ("Prister") is an individual who, at all relevant times, was a supervisor and employee of the City of Oak Park. She is sued in her official and individual capacity.
4. At all times relevant to the claim Plaintiff's supervisor was an employee and agent of the Defendant City of Oak Park ("Defendant City") and was acting in her official capacity as such.
5. Defendant Ariana Grefke ("Grefke") is an individual who, at all relevant times, was an employee of the City of Oak Park. She is sued in her individual capacity.
6. Defendant India England ("England") is an individual who, at all relevant times, was an employee of the City of Oak Park.
7. At all relevant times, Plaintiff was an employee of the City of Oak Park, working as a records clerk.
8. This Court has subject matter jurisdiction over Plaintiff's claims under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 et seq.; under Michigan common law for invasion of privacy; under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601

et seq. The FMLA expressly authorizes actions to be brought in state court. *See* 29 U.S.C. § 2617(a)(2). This Court has concurrent jurisdiction over Plaintiff's FMLA claim because it arises from the same nucleus of operative facts as Plaintiff's state law claims and is properly joined in this action.

9. Venue is proper in Oakland County because Defendant City of Oak Park is located in Oakland County, and all or most of the events giving rise to the claims occurred in Oakland County.

**FACTUAL ALLEGATIONS**

10. Plaintiff began working as a records clerk for the City of Oak Park on or about June 24, 2024. Her duties included processing FOIA requests, gun permits, and other records.

11. Plaintiff is a Muslim woman of Iraqi descent. She observes religious practices including fasting during Ramadan.

12. Prior to working for the City, Plaintiff was sexually assaulted by a police officer while working at the Dearborn Police Department. She filed police reports, and an article was published about the incident that did not name Plaintiff.

13. Sexual assault is among the most intimate and deeply personal violations a person can endure.

14. Information identifying a survivor as the victim of such an assault is not an ordinary employment fact or a matter Plaintiff could reasonably expect to be circulated among coworkers.

15. Michigan law reflects that fundamental privacy interest. The Michigan Constitution guarantees crime victims the right to be treated with fairness and with respect for their "dignity and privacy" throughout the criminal-justice process. Mich. Const. 1963, art. 1, §

24. Consistent with that guarantee, the Crime Victim's Rights Act shields a victim's home and work addresses, telephone numbers, and visual images from disclosure under Michigan's Freedom of Information Act, and it protects names and other identifying information for victims who were minors when the sexual offense occurred. Mich. Comp. Laws § 780.758(3).

16. Michigan law also exempts from public disclosure information that would identify a party who proceeds anonymously in a civil action alleging sexual misconduct. Mich. Comp. Laws § 15.243(1)(cc).

17. These protections reflect a settled public policy: a sexual-assault survivor's identity and connection to the assault are intensely private matters that should not be exposed, circulated, or used without legitimate need.

18. Plaintiff had taken deliberate steps to preserve that privacy, including remaining unnamed in the published article, and she reasonably expected the City and its employees to respect it.

***<u>Prister Responds to Plaintiff's Ramadan Observance with Anti-Muslim Remarks</u>***

19. In March 2025, Plaintiff informed her supervisor, Stephanie Prister ("Prister"), that she would be fasting for Ramadan in observance of her Muslim faith.

20. In response, later that same day, Prister made a series of derogatory and discriminatory comments regarding Plaintiff's religious observance and her Muslim faith. Specifically, Prister questioned Plaintiff's ability to perform her job duties while fasting, including mockingly expressing concern that Plaintiff might "pass out" and "be grumpy this month."

21. Later that day, while Plaintiff was fasting, Prister stated in Plaintiff's presence that " a lot of Islamics [sic] had caused problems in Oak Park." These comments were made in the

presence of other City employees and were offensive, humiliating, and discriminatory to Plaintiff.

***<u>The City Acknowledges Stephanie's Discriminatory Conduct but Declines to Discipline Her</u>***

22. Plaintiff promptly reported Prister's comments to Human Resources.
23. During its response, Human Resources representative Carla Allen ("Allen") acknowledged that Prister's comments reflected an "ignorant problem" directed toward Muslims and stated that comparable remarks about Black employees would have been treated as discrimination.
24. Allen also acknowledged that Prister had been the subject of multiple prior discrimination complaints.
25. Despite that history, the City imposed no formal discipline, placed no notation in Stephanie's personnel file, and required only two days of training.
26. In total, the City took no action that was reasonably calculated to actual stop the discriminatory and harassing conduct.

***<u>After Plaintiff Complains, Anti-Muslim and National-Origin Harassment Continues</u>***

27. In April of 2025, Plaintiff was subjected to additional Islamophobic comments by a co-worker, Ariana Grefke ("Grefke"), who at all times was an employee and agent of the Defendant City and acting in her capacity as the same. Grefke stated:
    a. Imams and "creepy and pedophile-like,"
    b. Made disparaging comments about the call to prayer that is played publicly
    c. Grefke also referred to a person associated with the Hamtramck Police Department as a "whore" and described that person as Plaintiff's "kind."

28. This statement was made with the intent to demean and humiliate Plaintiff based on her national origin.

29. Prister was present for some of these comments and walked away without addressing them despite her responsibility as a supervisor and agent of Defendant Oak Park to ensure a safe and discrimination free workplace for all its employees including Plaintiff. Moreover, Prister's actions in witnessing and ignoring these bigoted comments served as a tacit approval of the discriminatory and hostile behavior.

***Coworkers Turn the Harassment Toward Plaintiff's Sex and Sexuality***

30. On multiple occasions, co-workers made sexually degrading comments about Plaintiff the nature of which amounted to sexual harassment and created a hostile working environment for Plaintiff. .

31. For instance on one occasion in August of 2025, Plaintiff overheard co-workers Grefke and India England ("England") state that Plaintiff "gave it up to Detective Gore," a reference Plaintiff took to indicate that she had engaged in sexual intercourse with one of the Oak Park Police Detectives. This statement was not only offensive but categorically false.

32. Plaintiff also overheard these co-workers comment that Plaintiff "likes Black dick," and that she "already gave him head." A comment Plaintiff believed to indicate that her co-workers were accusing her of engaging in oral sex acts with the Detective. These comments were categorically false.

33. These comments were made loudly in the workplace to fellow co-workers in a manner that could be overheard by other employees or individuals in the city offices

34. Another occasion, co-workers speculated about Plaintiff's sexuality and referred to her as a "witch."

35. Plaintiff brought these incidents to the attention of Prister and the Human Resourced Department of Defendant Oak Park. However, these complaints were never addressed or investigated.

36. Moreover, all incidents of harassment based on sex and religion were done either in the presence of agents and supervisors of Defendant City or were reported to those responsible for addressing such harassment, but no action was taken by Defendant City to stop the harassment or discipline any individual involved.

***Prister Accesses Plaintiff's Private History and Spreads It Through the Workplace***

37. Plaintiff guarded the fact that she had been sexually assaulted with great care. She did not disclose the assault to her coworkers at the City of Oak Park, did not discuss the underlying police investigation, and did not invite anyone in the workplace into that deeply private part of her life.

38. Yet, at some point, information about what had happened to Plaintiff while she worked for the Dearborn Police Department began circulating among City employees. Coworkers who had never been told by Plaintiff learned of the assault, and the information spread through the workplace without her knowledge or consent. Upon information and belief, that disclosure began with Stephanie's misuse of the City's Court and Law Enforcement Management Information System ("CLEMIS").

39. CLEMIS is a secure police-records database used by law-enforcement agencies throughout Michigan. It is not a tool for workplace gossip, personal curiosity, or private investigation. Before gaining access, users must acknowledge that they may not use the system for personal purposes, personal gain, or to invade another person's privacy.

40. Despite those restrictions, Prister is believed to have used her privileged access to search for records concerning Plaintiff and the Dearborn sexual assault, obtain information Plaintiff had never shared with her coworkers, and disclose that information to employees and agents of the City.

41. In doing so, Prister allegedly converted a restricted law-enforcement database into a means of exposing Plaintiff's most private history to the very workplace from which Plaintiff had deliberately kept it confidential. After realizing that her most private and sensitive information had become fodder for the Defendant Oak Park's city offices, Plaintiff once again complained to Human Resources about the disclosure of this truly personal and private information.

42. During a meeting with the Defendant City's human resources department, in the presence of Defendant City's representatives, Prister admitted that she was aware of Plaintiff's history of being sexually assaulted and confirmed that she had disclosed that private information to other City employees without Plaintiff's knowledge or consent. Prister further acknowledged that her actions toward Plaintiff were retaliatory in nature.

43. On or around January 2025, Prister showed Plaintiff's confidential personnel file to a younger male officer without Plaintiff's knowledge or consent. Prister pointed out Plaintiff's date of birth to the officer. The officer had not asked to see the file or requested Plaintiff's personal information and even if he had the disclosure of that information by Prister, along with any conversation involving Plaintiff's dating life, was completely inappropriate. Prister's conduct violated the City's own confidentiality policies and the nondisclosure agreement she had signed as a City employee.

44. On multiple occasions when Plaintiff received flowers at work—which were sent anonymously—her co-workers mocked and ridiculed her.

45. On one such occasion, co-workers made degrading comments suggesting that a plastic light on Plaintiff's desk was a "sex toy" when, in fact, it was not.

46. On other occasions, co-workers interrogated Plaintiff about the origin of flowers and suggested they were from Dearborn, which was a reference to her prior sexual assault and was intended to humiliate and degrade her and indeed did make Plaintiff feel embarrassed, humiliated and degraded.

***<u>The Harassment Escalates After Plaintiff Seeks Help</u>***

47. These comments were made in the presence of other City employees, including management, who did not intervene or take corrective action.

48. These comments caused Plaintiff significant emotional distress, humiliation, and anxiety, and exacerbated her pre-existing PTSD symptoms.

49. Plaintiff complained to the City's HR department repeatedly, beginning in early May 2025, about the discrimination, harassment, and invasion of privacy. The City took no meaningful disciplinary action against Stephanie or the co-workers.

50. In response to Plaintiff's complaints, Prister and co-workers, Grefke and England, increased the harassment. They falsely told others that Plaintiff was "competing with them" and "jealous." They reduced Plaintiff's work assignments while giving assignments to non-Muslim, non-Middle Eastern co-workers.

51. Prister scheduled Plaintiff to work on days when other employees were off, without paying overtime. The days would include holidays, as well as routine days other City employees were not working such as every other Friday.

52. Even though Prister required Plaintiff to work on holidays, Plaintiff was not accommodated for Eid, a Muslim-religious holiday, and had to use her personal days.

53. Prister had also approved Plaintiff to leave early during Ramadan in March of 2025 to break her fast and make up for not taking a lunch hour, but later reversed her decision after an employee resigned.

***<u>The City's Failure to Stop the Harassment Forces Plaintiff to Take Medical Leave</u>***

54. On August 15, 2025, Plaintiff went on continuous FMLA leave due to the severe harassment and its impact on her mental health. Her FMLA leave was approved beginning July 7, 2025, and she remained on leave after August 15.

55. On or about October 29, 2025, the City notified Plaintiff that if she did not return to work by November 4, 2025, her continued absence would be treated as job abandonment.

56. On July 30, 2025, Plaintiff filed a dual complaint with MDCR and EEOC (MDCR Case No. 658507), alleging discrimination based on religion and retaliation. A true and correct copy of the MDCR charge is attached as **Exhibit A**.

57. On February 17, 2026, MDCR dismissed the complaint, stating there was "insufficient evidence to proceed." The dismissal was mailed on March 19, 2026. A true and correct copy is attached as **Exhibit B**.

58. The harassment was so pervasive and severe that it created a hostile working environment for Plaintiff, such that it interfered with her ability to perform the functions of her job appropriately. Plaintiff's work performance suffered as she became hypervigilant and unable to focus on her duties due to the constant fear of harassment.

59. The harassment based on religion, national origin, and sex was severe and pervasive. It caused Plaintiff to suffer significant emotional distress, including anxiety, depression, humiliation, and a recurrence of PTSD symptoms related to her prior sexual assault.

60. As a direct result of the harassment, Plaintiff began treating with a licensed therapist in or around August 2025 and was formally diagnosed with PTSD and Generalized Anxiety Disorder. Her mental health provider recommended she take leave from work, leading to her FMLA leave beginning August 15, 2025. Plaintiff continues to require ongoing mental health treatment.

## CLAIMS FOR RELIEF

### Count I –Harassment / Hostile Work Environment
### Religion
### (ELCRA, MCL 37.2202)
### Against Defendant Oak Park

61. Plaintiff references and incorporates all previously pled paragraphs as if fully laid forth herein.

62. Plaintiff is a member of a protected class (religion – Muslim).

63. She was subjected to unwelcome, severe, and pervasive harassment based on her religion, including Islamophobic comments about "Islamics causing problems," imams being "pedophile-like," and questioning her ability to work while fasting.

64. But for Plaintiff's religion, she would not have been subjected to these comments and the hostile work environment created thereby.

65. The harassment was both subjectively and objectively offensive, and it altered the conditions of Plaintiff's employment.

66. The City knew of the harassment because Plaintiff made multiple complaints to the City's Human Resources department and management regarding the religious discrimination and

harassment she was subjected to. Despite this actual notice, the City failed to take prompt, adequate corrective action.

67. As a direct and proximate result of the religious harassment and the City's failure to take corrective action, Plaintiff has suffered and continues to suffer actual damages, including:

a. Lost wages and benefits for the period during which she was forced to take FMLA leave and has been unable to return to work due to the harassment;

b. Severe emotional distress, including anxiety, depression, and humiliation;

c. Embarrassment and loss of dignity in the workplace;

d. Recurrence and exacerbation of PTSD symptoms related to her prior sexual assault;

e. Medical expenses and costs associated with therapy and mental health treatment; and

f. Loss of enjoyment of life.

**Count II –Harassment / Hostile Work Environment**
**National Origin**
**(ELCRA, MCL 37.2202)**
**Against Defendant Oak Park**

68. Plaintiff references and incorporates all previously pled paragraphs as if fully laid forth herein.

69. Plaintiff is a member of a protected class (national origin – Iraqi/Middle Eastern).

70. She was subjected to unwelcome, severe, and pervasive harassment based on her national origin, including comments referencing a person Plaintiff knew at the Hamtramck police as a "whore" and describing that person as Plaintiff's "kind," which was a direct reference to Plaintiff's Middle Eastern origin. These comments were made with the intent to demean and humiliate Plaintiff based on her national origin.

71. But for Plaintiff's national origin, she would not have been subjected to these comments and the hostile work environment created thereby.

72. The harassment was both subjectively and objectively offensive, and it altered the condition of Plaintiff's employment.

73. The City knew of the harassment because Plaintiff made multiple complaints to the City's Human Resources department and management regarding the discrimination and harassment she was subjected to. Despite this actual notice, the City failed to take prompt, adequate corrective action.

74. As a direct and proximate result of the national origin harassment and the City's failure to take corrective action, Plaintiff has suffered and continues to suffer damages.

**Count III –/ Hostile Work Environment / Sexual Harassment**
**Sex**
**(ELCRA, MCL 37.2202)**
**Against Defendant Oak Park**

75. Plaintiff references and incorporates all previously pled paragraphs as if fully laid forth herein.

76. Plaintiff is a member of a protected class (sex – female).

77. Plaintiff was subjected to unwelcome, severe, and pervasive harassment based on her sex when Stephanie improperly accessed, obtained, and disclosed Plaintiff's confidential history of being a sexual assault victim to other City employees without Plaintiff's knowledge or consent. This disclosure was made in the workplace and was intended to humiliate and degrade Plaintiff based on her sex.

78. But for Plaintiff's sex, she would not have been subjected to this harassment, as the disclosure of her sexual assault history was specifically targeted at her as a female victim of sexual violence.

79. The harassment was both subjectively and objectively offensive, and it altered the conditions of Plaintiff's employment.

80. The City knew of the harassment because Plaintiff made multiple complaints to the City's Human Resources department and management regarding the disclosure and the harassment she was subjected to. Despite this actual notice, the City failed to take prompt, adequate corrective action.

81. As a direct and proximate result of the sexual harassment and the City's failure to take corrective action, Plaintiff has suffered and continues to suffer the damages alleged in Paragraph

**Count IV – Retaliation**
**(ELCRA, MCL 37.2701)**
**Against Defendant Oak Park**

82. Plaintiff references and incorporates all previously pled paragraphs as if fully laid forth herein.

83. Plaintiff engaged in protected activity by complaining to HR and management about religious, national origin, and sexual harassment, and by filing an MDCR/EEOC charge.

84. The City took adverse employment actions against her, including: reducing her work assignments; scheduling her to work without overtime; threatening to deem her continued FMLA leave as job abandonment; and subjecting her to increased harassment and gossip after she complained.

85. But for Plaintiff's protected activity, she would not have been subjected to these adverse employment actions.

86. There is a causal connection between the protected activity and the adverse actions.

87. As a direct and proximate result of the City's retaliatory actions, Plaintiff has suffered actual damages, including:

    a. Lost wages and benefits resulting from the reduction in work assignments and the constructive termination of her employment.

    b. Severe emotional distress, including anxiety, depression, and humiliation;

    c. Embarrassment and loss of dignity in the workplace.

    d. Recurrence and exacerbation of PTSD symptoms related to her prior sexual assault;

    e. Medical expenses and costs associated with therapy and mental health treatment;

    f. Loss of enjoyment of life; and

    g. Such other damages as may be proven at trial.

**Count V – Defamation Per Se**
**(Michigan Common Law)**
**Against Defendants Grefke and England**

88. Plaintiff references and incorporates all previously pled paragraphs as if fully laid forth herein.

89. Defendants Grefke and England made false and defamatory statements about Plaintiff, including that Plaintiff "gave it up to Detective Gore," that Plaintiff "likes Black dick," and that Plaintiff "already gave him head."

90. These statements were made to third parties in the workplace and were heard by other employees.

91. The statements were false.

92. The statements accused Plaintiff of engaging in sexual intercourse and oral sex acts and accuse Plaintiff of a lack of chastity.

93. The statements falsely imputed sexual conduct and a lack of chastity to Plaintiff. Under MCL 600.2911(1), words imputing a lack of chastity are actionable in themselves. The statements were made with malice, or at a minimum, with reckless disregard for the truth.

94. As a direct and proximate result of the defamation, Plaintiff has suffered and continues to suffer actual damages, including:

  a. Severe emotional distress, including anxiety, depression, humiliation, and a recurrence of PTSD symptoms;
  b. Embarrassment and loss of dignity in the workplace and in her personal life;
  c. Medical expenses and costs associated with necessary therapy and mental health treatment;
  d. Loss of enjoyment of life; and
  e. Such other damages as may be proven at trial.

**Count VI – Invasion of Privacy – Intrusion Upon Seclusion**
**(Michigan Common Law)**
**Against Individual Defendant Prister**

95. Plaintiff references and incorporates all previously pled paragraphs as if fully laid forth herein.

96. Plaintiff's history of being a sexual assault victim is a secret and private subject matter. She has a right to keep that information private.

97. Prister, acting in her individual capacity and outside the scope of her employment with Defendant City, and using resources and access that were only available to her because of

her official position as a City supervisor, intentionally intruded upon Plaintiff's private affairs by:

a. accessing or obtaining Plaintiff's confidential history of sexual assault through improper means (including possible misuse of a City database);

b. disclosing that information to other City employees without Plaintiff's consent;

c. showing Plaintiff's personnel file (including date of birth) to a third party.

98. The intrusion would be highly offensive to a reasonable person.

99. As a direct and proximate result of the intrusion upon her seclusion, Plaintiff has suffered and continues to suffer actual damages, including:

a. Severe emotional distress, including anxiety, depression, humiliation, and a recurrence of PTSD symptoms;

b. Embarrassment and loss of dignity;

c. Medical expenses and costs associated with therapy and mental health treatment; and

d. Loss of enjoyment of life

100. The City is vicariously liable for Prister’s intentional tort because she used resources, access, and authority that were only available to her by virtue of her official position with the City, and because her conduct was committed, at least in part, within the scope of her employment and in furtherance of the City's interests. Alternatively, to the extent Defendant Prister’s conduct exceeded the scope of her employment, she is individually liable for her tortious conduct. Further, the City is directly liable for ratifying Prister’s conduct, as the City, through its Human Resources department, had actual knowledge of Prister’s

misconduct through Plaintiff's multiple complaints and failed to take any meaningful corrective action.

**Count VII – Invasion of Privacy –**
**Public Disclosure of Private Facts (Michigan Common Law)**
**Against Individual Defendant Prister**

101. Plaintiff references and incorporates all previously pled paragraphs as if fully laid forth herein.

102. Prister, acting in her individual capacity and outside the scope of her employment with Defendant City, and using resources and access that were only available to her because of her official position as a City supervisor, disclosed private facts about Plaintiff—specifically, that Plaintiff had been sexually assaulted and details of her personnel file—to other City employees and to a third party officer, without Plaintiff's knowledge or consent.

103. Those facts are not of legitimate public concern. Their disclosure would be highly offensive to a reasonable person.

104. The disclosure was intentional or reckless.

105. As a direct and proximate result of the public disclosure of private facts, Plaintiff has suffered and continues to suffer actual damages, including:

a. Severe emotional distress, including anxiety, depression, humiliation, and a recurrence of PTSD symptoms;

b. Embarrassment and loss of dignity;

c. Medical expenses and costs associated with therapy and mental health treatment; and

d. Loss of enjoyment of life.

106. The City is vicariously liable for Prister's intentional tort because she used resources, access, and authority that were only available to her by virtue of her official position with the City, and because her conduct was committed, at least in part, within the scope of her employment and in furtherance of the City's interests. Alternatively, to the extent Prister's conduct exceeded the scope of her employment, she is individually liable for her tortious conduct. Further, the City is directly liable for ratifying Prister's conduct, as the City, through its Human Resources department, had actual knowledge of Prister's misconduct through Plaintiff's multiple complaints and failed to take any meaningful corrective action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Award compensatory damages for emotional distress, pain and suffering, and loss of enjoyment of life in an amount to be determined at trial;

B. Award economic damages, including lost wages and benefits, past and future;

C. Award punitive damages on Counts IV and V (Invasion of Privacy), and award exemplary damages as authorized under the ELCRA on Counts I, II, and III;

D. Award reasonable attorneys' fees and costs under ELCRA, MCL 37.2802, and the FMLA, 29 U.S.C. § 2617(a)(3);

E. Order injunctive relief, including workplace reforms, training, and monitoring to prevent further discrimination and retaliation;

F. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,

Dated: August 19, 2026

CAIR-MI LEGAL FUND

Jad Salamey

Jad Y. Salamey, P88517
1905 S. Haggerty Rd, Suite 5
Canton, MI 48188
Tel. (313)-314-3819
jsalamey@cair.com

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

TAMMARA SALOUM,

Plaintiff,

Case No.: 2026-225353-CZ
Hon. Daniel P. O'Brien

v.

CITY OF OAK PARK; STEPHANIE PRISTER, in her official and individual capacities; ARIANA GREFKE, in her individual capacity; INDIA ENGLAND, in her individual capacity,

Defendants.


| | |
|---|---|
| Jad Salamey (P88517)<br>Amy V. Doukoure (P90461)<br>CAIR-MI LEGAL FUND<br>Attorneys for Plaintiff<br>1905 S. Haggerty Road, Suite 5<br>Canton, MI 48188<br>313.314.3819<br>jsalamey@cair.com<br>adoukoure@cair.com | John J. Gillooly (P41948)<br>GARAN LUCOW MILLER, P.C.<br>Attorney for Defendants<br>1155 Brewery Park Blvd., Suite 200<br>Detroit, MI 48207-2641<br>313.446.5501 / Fax: 313.259.0450<br>jgillooly@garanlucow.com |


**NOTICE OF FILING OF REMOVAL**

**PLEASE TAKE NOTICE** that a Notice of Removal of the entitled action from the Oakland County Circuit Court, State of Michigan, to the United States District Court for the Eastern District of Michigan, a copy of which is attached hereto, was duly filed September 2, 2026, in the United States District Court for the Eastern District of Michigan.

Respectfully submitted:

GARAN LUCOW MILLER, P.C.

/s/John J. Gillooly
JOHN J. GILLOOLY (P41948)
Attorney for Defendants
1155 Brewery Park Blvd., Suite 200
Detroit, MI 48207
313.446.5501
jgillooly@garanlucow.com

Dated: September 2, 2026

**Proof of Service**

The undersigned certifies that a copy of the foregoing instrument was served upon the attorney(s) of record of all parties to the above cause at their respective addresses as disclosed by the pleadings of record herein on September 2, 2026,

by: ___ U.S. Mail ✔ MiFILE
___ Hand Delivery ___ Overnight Courier
___ Facsimile ___ Electronic Mail

*I declare under the penalty of perjury that the statement above is true to the best of my information, knowledge and belief.*

/s/Dena Marie Shealy

9289072